UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH FITZPATRICK,

       Plaintiff,                       CIVIL ACTION NO. 10-10309

       v.                              DISTRICT JUDGE BERNARD FRIEDMAN

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On January 24, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, Disability Insurance and Supplemental Security Income benefits (Dkt. No. 2). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 8, 9).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on January 12, 2006, alleging that he became unable to work on September 2, 2005 (Tr. 69). The claim was initially disapproved by the Commissioner on August 8, 2006 (Tr. 64-68). Plaintiff requested a hearing and, on August 7, 2008, Plaintiff appeared without counsel before Administrative Law Judge (ALJ) James Alderisio, who considered the case *de novo*. In a decision dated March 20, 2009, the ALJ found that Plaintiff was not disabled (Tr. 15-25).

Plaintiff requested a review of this decision on May 10, 2009 (Tr. 13). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Tr. 158-161), the Appeals Council, on December 4, 2009, denied Plaintiff's request for review (Tr. 4-7).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings and conclusions of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 53 years old at the time of the most recent administrative hearing (Tr. 20). Plaintiff has past relevant work as a computer-aided design engineer and home health care provider (Tr. 23-24). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since September 2, 2005 (Tr. 20). At step two, the ALJ found that Plaintiff had the following "severe" impairments: visual disturbances, hypertension and obesity. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 21). Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...except no climbing ropes, scaffolds or ladders; occasional climbing of ramps

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

and stairs; no night driving; no reading; no eye strain; no kneeling; low stress; non production line and object focused" (Tr. 21). At step four, the ALJ found that Plaintiff could not perform his previous work as a computer aided design engineer or home health care provider (Tr. 23-24). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as small products assembly (8,000 jobs), packer (6,000 jobs) or machine tender (12,000 jobs) (Tr. 24)

### B.     *Plaintiff's Claims of Error*

Plaintiff makes three challenges on appeal, namely: (1) that the ALJ's RFC finding did not accommodate the functional limitations resulting from Plaintiff's obesity and vision problems; (2) that the ALJ did not adequately develop the record; and (3) that the ALJ did not properly assist Plaintiff (proceeding *pro se*) in presenting his case.

## III.    DISCUSSION

### A.     *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court

"must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla

of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II

benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C.     *Analysis and Conclusions*

Plaintiff's primary challenge on appeal is that the ALJ failed to properly weigh Plaintiff's credibility in determining his ability to work, and, as a result, the ALJ's hypothetical question to the VE did not accurately portray Plaintiff's impairments (Pl.'s Br. at 2-5). Specifically, Plaintiff avers, in a rather conclusory fashion, that the ALJ's RFC finding was legally inadequate because he did not adhere to the requirements of SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996). Plaintiff claims that, pursuant to SSR 96-8p, an ALJ must articulate in his RFC discussion a "function-by-function" assessment of a claimant's ability to perform numerous work-related activities. *Id.* Defendant responds that Plaintiff's argument is without merit, as the ALJ's RFC satisfies the articulation requirements of SSR 96-8p. Defendant is correct.

Here, the ALJ addressed Plaintiff's vision problems, ability to climb, inability to kneel or drive at night, and his limitations to low stress, non production line work (Tr. 21-23). Further, the ALJ expressed that Plaintiff retained the ability to perform the exertional demands of light work (Tr. 21). The ALJ noted that Plaintiff testified that he takes medication for his hypertension and noted that it appeared to be under good control (Tr. 23 referring to 124, 174). The ALJ also noted that Plaintiff "alleged problems with his left knee and right ankle but there is little medical evidence to support any long lasting effects. However, giving some credence to his testimony and the effects of his visual impairment, the claimant is restricted from climbing ladders, ropes or scaffolds, no kneeling and only occasional climbing ramps and stairs" (Tr. 23). Thus, it is apparent from his decision that the ALJ accommodated Plaintiff's functional limitations to the extent he found them to be supported by the objective medical evidence of record and the undersigned finds no basis to disturb the ALJ's findings on appeal. *See, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing SSR 96-8p) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.").

Plaintiff next argues that the ALJ did not properly consider Plaintiff's obesity and vision problems in evaluating his claim of disability (Pl.'s. Br. at 4). In regards to obesity, Plaintiff avers that someone of his age and size would be unable to perform the standing requirements of light work. Defendant responds that Plaintiff's argument ignores the fact that Plaintiff carried the burden of proof through step four of the sequential evaluation including the burden of proving the existence and severity of limitations caused by his impairments. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that [he] is precluded from

performing [his] past relevant work . . . ."). Defendant is correct. Plaintiff has not established that he is unable to perform the exertional requirements of the range of light work identified by the ALJ.

As previously noted, the ALJ expressly found that Plaintiff had "severe" impairments, including "obesity" (Tr. 20). The ALJ recognized that Plaintiff is 6'6" tall and weighs approximately 300 pounds with a body mass index of 34.7 – which is classified as obese (Tr. 23). Thus, the ALJ squarely addressed Plaintiff's obesity, found it to be a severe impairment which significantly impacted Plaintiff's ability to do basic work activities (Tr. 22-23). Further, the ALJ acknowledged that Plaintiff had other impairments that were impacted by Plaintiff's obesity (Tr. 23). Specifically, the ALJ stated:

> [W]hile the levels of obesity described by the NIH do not correlate with any specific degree of functional loss, obesity can cause or contribute to impairments in the musculoskeletal, respiratory, and cardiovascular body systems and must be considered to determining if it alone or in combination with other impairments significantly limits an individual's physical or mental ability to do basic work activities (SSR 02-1p) (Tr. 23).

In limiting Plaintiff to the reduced range of light work identified in his RFC finding, the ALJ observed that Plaintiff reported being able to walk half a mile (Tr. 22, citing Tr. 96), and that he was able to mow the lawn and shovel snow (Tr. 22 citing Tr. 93). To the extent the ALJ found Plaintiff limited by his weight, the ALJ restricted Plaintiff "from climbing ladders, ropes, or scaffold, no kneeling, and only occasional climbing of ramps and stairs" (Tr. 23).

In sum, the ALJ treated obesity as one of Plaintiff's primary impairments and expressly considered and applied SSR 02-1p (Tr. 23). The Social Security Administration removed obesity as a listed impairment because in its experience, "[T]he criteria in listing 9.09 did not represent the degree of functional limitation that would prevent an individual from engaging in any substantial gainful activity." Titles II & XVI: Evaluation of Obesity, SSR 02-1p (reprinted in 2000 WL 628049, at * 1 (SSA Sept. 12, 2002)). SSR 02-1p states that the Administration "will not make assumptions

about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity of functional limitations of the other impairment." *Id.* at 6. The ruling notes that obesity "can cause limitation of function" and that the "combined effects of obesity with other impairments may be greater than might be expected without obesity." *Id.* The ALJ took the combined effect of Plaintiff's obesity with other impairments, such as left knee and right ankle impairments, into account (Tr. 23). Simply put, the undersigned finds no error.

Likewise, with respect to Plaintiff's vision problems, the ALJ restricted Plaintiff from night driving; reading; or work involving eye strain (Tr. 21). The ALJ observed that Plaintiff's vision did not preclude him from driving (Tr. 174), but that Plaintiff had reported to the Agency that he could not drive at night (Tr. 94). Thus, the ALJ restricted Plaintiff from driving at night (Tr. 21). Also, the ALJ noted that Plaintiff "is still able to use a computer and he reads fairly well but at times must look more closely at objects" (Tr. 22 referring to Tr. 91-98). Nevertheless, the ALJ further accommodated Plaintiff's vision trouble by restricting him from work that required reading (Tr. 21).

Finally, Plaintiff argues that the ALJ did not fairly and fully develop the record and/or that the ALJ did not properly assist Plaintiff in presenting his case. Again, it is well established that Plaintiff carries the burden of establishing disability. *See* 20 C.F.R. § 404.1512(a). However, Plaintiff is correct in noting that ALJs have an increased responsibility to develop the record when considering a *pro se* claimant. Indeed, in *Lashley v. Sec'y of Health and Hum. Serv's.*, 708 F.2d 1048 (6th Cir.1983), the Sixth Circuit reversed a denial of disability benefits partly because the ALJ failed to develop "a full and fair record." *Id.* at 1051. In that case, however, the claimant was a 79 year-old with a fifth grade education, who after suffering two strokes had trouble reading, writing, and reasoning. *Id.* at 1049. At Lashley's hearing, the ALJ conducted a superficial examination that

failed to heed the claimant's obvious confusion and inability to effectively present a case. *Id.* at 1052. Finding this process insufficient, the Sixth Circuit held that under special circumstances – when a claimant was: (1) without counsel; (2) incapable of presenting an effective case; and (3) unfamiliar with hearing procedures – the ALJ has a special, heightened duty to develop the record. *Id.* at 1051-52.

Absent such special circumstances – which do not exist in this case – the Sixth Circuit repeatedly affirms that the claimant bears the ultimate burden of proving disability. *See, e.g., Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. App'x. 113, 115 (6th Cir. 2003). Though Plaintiff chose to proceed without counsel, the hearing transcript discloses his grasp of the proceedings and the adequacy of his case presentation to the ALJ. In this case, the ALJ thoroughly questioned Plaintiff about his abilities and his education, including two years at the National Institute of Technology (Tr. 168); his past relevant work in computer design as CAD operator (Tr. 168-69); and his impairments including vision difficulties, high blood pressure, knee problems, and obesity (Tr. 167, 170-71, 174-75). The ALJ also gave Plaintiff time before and after the hearing to review his file stating, "because I want to have all the information in there that I can" (Tr. 166). This case is not one in which the claimant had a limited education or a mental impairment resulting in cognitive deficiencies. Accordingly, the undersigned finds that the ALJ did not fail to fully develop the record, nor does the undersigned find that the ALJ should have provided greater assistance to Plaintiff in presenting his case.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: December 23, 2010

## *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, December 23, 2010, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-5542
